JOHN ELVEY *vs.* IRVING POWERS & another.

Suffolk. January 12, 1906. — May 17, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Negligence. Evidence.*

An experienced teamster who is sent to a mill to receive a load of bags of meal delivered through a chute, and adopts the method in use there of making a bridge connecting his wagon with the mouth of the chute by placing two planks with one end resting on his wagon and the other end on a sill of the building three inches wide, cannot recover from the proprietor of the mill for injuries caused by one of the planks slipping off the sill when he is standing upon it, and it does not help him if there was ice on the sill when he put the end of the plank there.

In an action by a teamster against the proprietor of a mill, to which he had been sent to receive a load of bags of meal, for injuries from the slipping of one of two planks on which the plaintiff was standing, which were used as a bridge connecting the plaintiff's wagon with the mouth of the chute, one end of the

planks resting on a sill of the building, the presiding judge in his discretion properly may exclude evidence that at some time previous to the accident the planks had moved off and that on the day before the accident the sill was covered with dust from the meal or corn.

TORT by a teamster for personal injuries received on January 14, 1903, from a fall caused by the slipping of one of the two planks on which the plaintiff was standing while loading bags of meal upon his wagon from the mill occupied by the defendants, dealers in grain and meal, on Cambridge Street in that part of Boston called Charlestown, the bags being delivered to him through a chute by an employee of the defendants. Writ dated May 14, 1903.

At the trial in the Superior Court before *Hardy*, J. it appeared that the planks were used to form a bridge over a space between the building and the street the bottom of which was three or four feet below the level of the street and contained a spur track of a railroad from which cars were unloaded into the building. The use of planks for this purpose was the method prevailing at the defendants' building. The plaintiff testified that he noticed other teamsters using the planks and watched the way they placed them when loading their teams. The two planks used by the plaintiff were about twelve feet long and ten inches or a foot wide. The planks were placed by the plaintiff in the position described in the opinion, where also other material facts are stated as well as the exclusion of certain evidence offered by the plaintiff.

The plaintiff's statement in regard to the matter of there being ice on the sill, which is referred to in the opinion, was that when he returned to his team after the accident he found a man, that he learned was the miller, chopping some ice off the sill with a small hatchet, and that that was the first knowledge he had that there was anything the matter with the sill. Another witness testified that after the plaintiff was hurt he saw the defendants' miller chopping ice off the sill. The miller himself testified that there was a "small little bit" of ice on the sill which he picked off the sill with a meat pick; that he picked "that ice out of the way so no more could slip."

At the close of the evidence the judge ordered a verdict for the defendants; and the plaintiff alleged exceptions.

*C. Reno & F. P. Fagan,* for the plaintiff.

*C. S. Knowles & W. B. Sprout,* for the defendants, were not called upon.

HAMMOND, J. The evidence tended to show that the accident was caused by the displacement of one end of one of two planks upon which the plaintiff was standing. Each plank was supported at one end by a sill three inches wide formed by a plank spiked to the side of the mill, and at the other end by the plaintiff's wagon. The planks lay on the wagon "on a perfectly flat surface," being "level from the building to the wagon," and "they did not slant or tip in any way." They were put in place and adjusted by the plaintiff. He was an experienced teamster, and although he testified that he had never before used such a contrivance in loading from a building he must be held nevertheless to have fully understood the perils incident to this method of loading and unloading a wagon. He accepted and used the planks with a full knowledge of their nature. By him they were adjusted, and he must be held to have known that upon him rested the duty of keeping them in place. It is argued by the plaintiff that there was ice upon the sill. But, even if that was so, it does not change the responsibility of the plaintiff.

The evidence that at some time previous to the accident the planks had moved off, as also the evidence that on the day before the accident the sill was covered with dust from the meal or corn, was properly rejected within the discretion of the court.

*Exceptions overruled.*